120 So.2d 273 (1960)
Loyd DAVIS
v.
UNITED FRUIT COMPANY.
No. 21328.
Court of Appeal of Louisiana, Orleans.
April 11, 1960.
Rehearing Denied May 23, 1960.
*274 Adrian G. Duplantier, New Orleans, for plaintiff and appellee.
Robert A. Collins and John S. Randall, New Orleans, for defendant and appellant.
REGAN, Judge.
Plaintiff, Loyd Davis, instituted this suit against the defendant, United Fruit Company, endeavoring to recover compensation at the rate of $35 per week, medical expenses, penalties on past due compensation and attorney's fees, for a ruptured intervertebral injury, which he incurred on May 8, 1958, while working as a banana "pusher" for the defendant.
Defendant answered and admitted the employment, but denied the injury and the resulting disability alleged by plaintiff.
From a judgment awarding plaintiff compensation at the rate of $35 per week from the date of injury until his recovery or until 400 weeks compensation has been paid, medical expenses, expert fees, attorney's *275 fees of $700 and 12% penalties on all unpaid compensation payments subsequent to July 30, 1958, defendant has prosecuted this appeal, restricting it to that part of the judgment which awarded penalties and attorney's fees. Plaintiff's attorney answered the appeal and prayed that the attorney's fees awarded be increased from $700 to $1,000 to compensate him for services rendered on the trial of the appeal hereof.
In pronouncing the foregoing judgment, the trial judge reasoned thus:
"There is only one issue in this case, and that is whether or not the defendant should be assessed with penalties and attorney's fees for failing to pay compensation without just and reasonable cause.
"Plaintiff is a colored man, 45 years of age. He had been employed by defendant for 19 years as a common laborer. In May, 1958, he was a so-called "pusher" on a banana conveyor, taking 75-lb. banana stems from the conveyor and putting them on the shoulders of other laborers, called `carriers'. While so engaged, one of the banana stems slipped and struck him on the thigh, forcing him either to jump or fall from the platform to the level below, a distance of two-and-a-half feet. He returned to the job after a short time, although there is some question he did it immediately or after a pause. He reported the incident to his foreman, who suggested he report to the Company's first aid station. Plaintiff told the foreman he would resume work and see if he needed medical treatment. Plaintiff explained he would rather earn his $25 per day than collect compensation of $35 per week. Subsequently it developed that plaintiff suffered a recurrence of a previous herniated ruptured disc, which was corrected by a laminectomy, after its confirmation by a myelogram.
"There is no question that plaintiff is presently incapacitated, and may be for an indefinite period. All the doctors who examined him so agree. Therefore, plaintiff is entitled to recover compensation for the time of his disability, on the basis of total temporary disability.
"The real question is whether defendant should be assessed with penalties and attorney's fees. Both the foreman on the job and the former attorney representing plaintiff, as well as the doctor who treated him, notified defendant of his condition, yet defendant denied liability and seemed to quibble over whether plaintiff jumped or fell from the platform. It seems immaterial whether he jumped or fell, because whether he did was involuntary and the result of seeking to avoid being struck by this 75-lb. banana stem. There is no charge that he deliberately tried to injure himself, nor is there any doubt that he suffered an aggravation of the previous injury while actually employed by defendant as a hard labor banana `pusher'.
"Penal statutes are strictly construed, and an employer must be arbitrary and capricious in refusing compensation before being assessed with penalties and attorney's fees. However, there is no reasonable question that plaintiff was injured and incapacitated while performing his work as a banana `pusher', and is presently incapacitated, yet defendant for eight months has refused him compensation and medical payments because of a quibble whether he fell or jumped when hit by a 75-1b. banana stem. Plaintiff's former attorney refused a lump-sum compromise (compromise settlement) of $2,000 which would have required plaintiff to pay therefrom all medical and attorney's fees and renounce future benefits, though still incapacitated. It appears that defendant's refusal to pay compensation, etc., was due to plaintiff's rejection of its lump sum (compromise) offer of $2,000. (Brackets added)
"Accordingly, the plaintiff is entitled to recover the compensation due since his injury, plus statutory penalties; and attorney's fees fixed at $700.00, and all medical expenses."
*276 The trial judge obviously concluded that plaintiff had suffered a compensable injury and found as a fact that the defendant had failed to pay him compensation without just and reasonable cause and, therefore, should be assessed penalties and attorney's fees.
Our examination of the record discloses an abundance of evidence to support the trial court's conclusion that the defendant failed to pay the plaintiff compensation without just and reasonable cause; however, the principal question posed for our consideration on appeal is whether plaintiff may recover penalties and attorney's fees against his employer, United Fruit Company, the defendant herein.
Plaintiff was injured on May 8, 1958. The 1958 Legislature adopted LSA-R.S. 23:1201.2, which was an amendment to the compensation act, permitting recovery of penalties and attorney's fees against self-insured employers. It became effective July 30, 1958. Prior to this amendment only insurers were so liable. This suit was instituted on October 21, 1958.
Defendant insists that since plaintiff's injury occurred on May 8, 1958, which was before the passage of LSA-R.S. 23:1201.2, which subjects employers to a penalty of 12% and attorney's fees for failure to pay a claim due under the compensation act when such failure is arbitrary, capricious or without probable cause, can only prescribe for the future; it can have no retroactive application nor can it impair the obligation of contracts.
On the other hand, plaintiff contends that the foregoing amendment to the compensation act, imposing penalties and attorney's fees on the employer, clearly had a remedial purpose, seeking the correction of a recognized abuse and implying an intention to reform existing rights. It did not change the substantive rights of the parties nor impair the obligation of the contract existing between them.
Remedial statutes are to be accorded a liberal construction in favor of those entitled to their benefits. This is true of a curative statute having a remedial purpose or a statute seeking correction of recognized abuses or implying an intention to reform or extend rights. The right of the legislature to enact statutes of this character may not be disputed; if they are remedial and effect the enforcement only and not the substance of the contract, they constitute a valid exercise of legislative authority and/or a declaration of the public policy of the state.
The amendment imposing penalties and attorney's fees upon the employer clearly had a remedial purpose, seeking the correction of a recognized abuse and implying an intent of the legislature to reform existing rights. It did not affect the substantive rights of the parties, nor impair the obligation of the contract between them. What, then, is the effect of R.S. 23:1201.2 with respect to an accident which occurred[1] before the effective date of the statute,[2] although suit was filed thereafter?[3]
In Wright v. National Surety Corporation,[4] the organ of the Supreme Court, in analyzing LSA-R.S. 22:658, a statute containing similar penalty and attorney's fee provisions, observed that it:
"* * * is remedial in nature even though it imposes penalties. * * * Therefore, it is applicable to policies issued prior to its enactment and to liability for insurance incurred thereunder before its effective date when the payments due are arbitrarily withheld for more than 60 days thereafter.

*277 Statutes of this kind have been held invulnerable to charges that they are violative of the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution and that they impair the obligation of contracts. * * *"[5]
We are therefore of the opinion that LSA-R.S. 23:1201.2, imposing penalties and attorney's fees upon the self-insured employer, clearly had a remedial purpose; it did not affect the substantive rights of the parties nor impair the obligation of the contract which existed between them.
Counsel for plaintiff has answered the appeal and requested that the attorney's fees awarded by the lower court be increased from $700 to $1,000 to compensate him for services rendered in connection with the appeal and the trial thereof in this court. We believe this to be a reasonable request and, therefore, the award for attorney's fees is increased to the sum of $1,000.
We notice that the judgment provided for a penalty of 12% on all payments due and unpaid subsequent to July 30, 1958. In view of what we have said hereinabove, we are of the opinion that the judgment should be amended so as to provide a penalty of 12% on all payments due and unpaid after May 8, 1958.
For the reasons assigned, the judgment appealed from is amended so as to provide a penalty of 12% on all payments due and unpaid since May 8, 1958, and it is further amended to increase the attorney's fees from the sum of $700 to the sum of $1,000, and as thus amended, the judgment in all other respects is affirmed.
Amended and affirmed.
NOTES
[1] May 8, 1958.
[2] July 30, 1958.
[3] October 21, 1958.
[4] 1955, 221 La. 486, 59 So.2d 695, 698, see footnote 2.
[5] Ibid. "See, Supreme Ruling of the Fraternal Mystic Circle v. Snyder, (1913, 227 U.S. 497, 33 S.Ct. 292, 57 L.Ed. 611.) Life & Casualty Ins. Co. v. McCray, 291 U.S. 566, 54 S.Ct. 482, 78 L.Ed. 987, and annotation `Constitutionality of statutes providing for additional liability or penalty for failure or delay by insurance company in paying claims,' in 78 L.Ed. 993-998. Compare, Central Glass Co. v. Niagara Fire Ins. Co., 131 La. 513, 59 So. 972, overruling Monteleone v. Seaboard Fire & Marine Insurance Co., 126 La. 807, 52 So. 1032, and holding Section 3 of Act 168 of 1908 (providing for payment of losses within 60 days after receipt of proofs under penalty of 12% damages) would unconstitutionally impair the obligation of contracts if applied to policies written before its passage. Also, compare Central Glass Co. v. Hamburg-Bremen Fire Ins. Co., 133 La. 598, 63 So. 236, distinguishing Supreme Ruling of Fraternal Mystic Circle v. Snyder, supra." (First citation added) See also Miller v. City of Shreveport, La.App.1956, 90 So.2d 565; General Motors Acceptance Corp. v. Anzelmo, 1953, 222 La. 1019, 64 So.2d 417; Brown v. Indemnity Ins. Company of North America, La.App.1959, 108 So.2d 812.